# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE METROPOLITAN DISTRICT COMMISSION,<br>    Plaintiff,<br><br>v.<br><br>QBE AMERICAS, INC. d/b/a QBE SPECIALTY INSURANCE COMPANY,<br>    Defendant. | No. 3:18-cv-01526 (SRU) |

## RULING ON MOTION TO DISMISS

In this action, The Metropolitan District Commission ("MDC") seeks a declaration that it is entitled to a defense and indemnity coverage under the public officials and employment practices liability policy ("the Policy") issued by QBE Specialty Insurance Company ("QBE") in connection with MDC's imposition of surcharges on water customers at issue in *Paetzold et al., v. Metro. Dist. Comm'n*, HHD-CV18-6090558-S.

On October 17, 2018, QBE filed a motion to dismiss, alleging that coverage is barred under several policy exclusions. *See* Mot. to Dismiss (Doc. No. 13). On May 7, 2019, I heard oral argument, after which I took the motion under advisement. *See* Doc. No. 36. I agree that MDC's claim is barred under the Policy's (1) prior knowledge condition and (2) self-dealing or illegal profit exclusion. Therefore, I **grant** QBE's motion to dismiss.

### I. Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch*

*Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

"Construction of a contract of insurance presents a question of law for the court." *Moore v. Cont'l Cas. Co.*, 252 Conn. 405, 409 (2000) (quoting *Pacific Indemnity Ins. Co. v. Aetna Casualty & Surety Co.*, 240 Conn. 26, 30 (1997)) (modification omitted). "The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the

injury within the coverage. If an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured." *Id.* (quoting *Flint v. Universal Machine Co.*, 238 Conn. 637, 646 (1996), and *Schwartz v. Stevenson*, 37 Conn. App. 581, 585 (1995)) (quotation marks and citations omitted). "The question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of [the] complaint with the terms of the insurance policy." *Cmty. Action for Greater Middlesex Cty., Inc. v. Am. All. Ins. Co.*, 254 Conn. 387, 395 (2000). "Because the duty to defend is significantly broader than the duty to indemnify, 'where there is no duty to defend, there is no duty to indemnify . . . .'" *DaCruz v. State Farm Fire & Cas. Co.*, 268 Conn. 675, 688 (2004) (quoting *QSP, Inc. v. Aetna Casualty & Surety Co.*, 256 Conn. 343, 382 (2001)).

**II.    Background**

  A. The Glastonbury Action

On February 12, 2014, the Town of Glastonbury ("Glastonbury") filed a civil action against MDC in the Judicial District of Hartford, captioned *Town of Glastonbury v. Metropolitan District Commission,* No. HHD-CV14-6049007-S ("Glastonbury Action"). *See* Ex. A to Mot. to Dismiss (Doc. No. 13-1). Glastonbury sought a declaratory judgment that the surcharge MDC levied on water recipients in non-member towns was unlawful.[1] *Id.* On August 13, 2015, Glastonbury moved for summary judgment. On May 12, 2016, the court entered an order

---

[1] Specifically, Glastonbury requested the following relief:

> That the Court determine and declare as follows: The Metropolitan District Commission does not possess the legislative authority to impose a "non-member surcharge," which the MDC refers to on water bills as a "Water NMT Surcharge," upon water customers in the Town of Glastonbury. Therefore, such non-member surcharges are unlawful.

Ex. A to Mot. to Dismiss, Demand for Relief.

3

granting Glastonbury's motion for summary judgment and denying MDC's cross-motion. *See Town of Glastonbury v. Metro. Dist. Comm'n*, 2016 WL 3179757 (Conn. Super. Ct. May 12, 2016). The court held that the non-member surcharge was illegal as a matter of law. *Id.* at *6. "Because the General Assembly did not authorize [MDC] to recover its water utility infrastructure or capital improvement costs, the surcharge included costs that [MDC] was not authorized to impose upon [Glastonbury] and therefore, it was illegal as a matter of law." *Id.*

On March 6, 2018, the Connecticut Supreme Court affirmed the trial court's judgment. *See Town of Glastonbury v. Metro. Dist. Comm'n*, 328 Conn. 326 (2018). "Upon review of the grants of authority made to [MDC], the court is compelled to conclude that the surcharge, which encompassed general costs that [MDC] was not expressly empowered to impose upon [Glastonbury], was unlawful." *Id.* at 344. The Connecticut Supreme Court further stated that:

> [Glastonbury] is seeking a declaration by the court that certain surcharges imposed by [MDC] were unlawful. [Glastonbury] is not presently seeking damages and is not obligated to do so. There is no question that if the surcharges are unlawful, then [Glastonbury] can demonstrate damages for those years the surcharges were imposed. It may be that [Glastonbury] has not articulated the specific legal theory under which it would recover those damages, and it is uncertain whether [Glastonbury] will seek to recover those damages at all.

*Id.* at 336 (internal citations omitted).

B. The Underlying Action

On March 6, 2018, a lawsuit was filed on behalf of a proposed class of MDC's water customers in the non-member towns of Glastonbury, East Granby, Farmington and South Windsor who paid the surcharge between January 1, 2006 and October 1, 2014. *See Paetzold et al., v. Metro. Dist. Comm'n*, HHD-CV18-6090558-S ("Underlying Action"). Count 1 of the Underlying Action asserts a breach of contract claim, alleging that MDC breached its contracts with customers in non-member towns by imposing the unlawful surcharge on the Plaintiffs. *See*

4

Underlying Compl. ¶¶ 24–29.  Count 2 alleges that MDC breached the duty of good faith and fair dealing by imposing the unlawful surcharge.  *Id*. ¶¶ 30–35. Count 3 alleges an unjust enrichment claim, charging that MDC benefited from the "payment of the unlawful Surcharges" and that "[e]quity and the interests of justice mandate . . . reimbursement of the unlawful Surcharges imposed from January 1, 2006 to October 1, 2014, plus interest."  *Id.* ¶ 42.  The Plaintiffs seek "[c]ompensatory damages exceeding $15,000,000" and "[i]nterest for monies wrongfully withheld."  *Id.* at Prayer for Relief.

MDC filed this lawsuit against QBE on August 10, 2018, seeking a declaration that it is owed a duty of indemnification and a duty of defense under the Policy.  *See* Doc. No. 1-1.  On September 10, 2018, QBE removed the case to this court.  *See* Doc. No. 1.  QBE subsequently moved to dismiss on October 17, 2018.  *See* Doc. No. 13.

### III. Discussion

#### A. The Underlying Action Alleges a "Wrongful Act" Under the Policy

Under the Policy, QBE agrees to cover damages that MDC becomes legally obligated to pay due to a wrongful act arising out of a discharge of duties by MDC.

**SECTION I – COVERAGE**

**A. Insuring Agreement**

> 1. We will pay those sums that the Insured becomes legally obligated to pay as damages because of a **wrongful act** (regardless of whether or not such allegations prove to be groundless, false or fraudulent) arising out of the discharge of duties by or on behalf of the Named Insured as shown in the Declarations provided always that:
>
> a. the **claim,** on account of such **wrongful act,** is first made against the Insured and reported to us during the policy period . . . .
>
> b. such **wrongful act** took place in the **coverage territory** . . . .

5

Policy, Section I – Coverage, A. Insuring Agreement (Doc. No. 13-6). The Policy defines "wrongful act" as "a negligent act, error, or omission or wrongful employment practice." Policy, Section VIII – Definitions, H, Wrongful Act.

QBE argues that MDC's claim does not involve a "wrongful act" because the Underlying Action does not contain any allegations of a "negligent act, error or omission" by MDC. *See* Mot. to Dismiss at 13. The Underlying Action asserts claims for breach of contract (Count 1), breach of good faith and fair dealing (Count 2), and unjust enrichment (Count 3), all arising out of MDC's imposition of the unlawful surcharge. Those claims, QBE asserts, involve intentional wrongdoing by MDC.

The Underlying Complaint alleges that MDC's surcharge was imposed on "every customer in East Granby, Farmington, Glastonbury, [and] South Windsor" and that MDC "claimed through March 2018 that it had a legal right to impose its Surcharge when it did not." Underlying Compl. ¶¶ 10–11. In addition, the complaint alleges that "[t]he MDC exercised its discretion to impose its unlawful Surcharge" without any "good faith basis," and that MDC "imposed the Surcharge for the improper purpose of compelling customers in non-member towns to subsidize customers in member towns." *Id*. ¶¶ 32–33. As a result, QBE argues that the allegations in the Underlying Complaint were all intentional, non-negligent acts that do not constitute wrongful acts under the Policy. *See* Mot. to Dismiss at 14.

In support of its argument, QBE relies on *Arthur J. Gallagher & Co. v. Bellamy-Baronowskus*, where the Connecticut Superior Court denied coverage under a medical malpractice policy with similar language[2] because the underlying complaint did not allege negligent conduct. 2001 WL 285268 (Conn. Super. Ct. Mar. 12, 2001). Because the plaintiff

---

[2] The policy at issue in *Bellamy-Bqaronowskus* provided coverage for "(a) any negligent act, error or omission of the Insured or any person for whose acts the Insured is legally liable." *See* 2001 WL 285268, at *1 n.3.

6

did not allege a negligent act, the court held that the claims at issue were not covered by the defendant's "errors and omissions" policy. *Id.* at *3. "This court follows other courts which have interpreted similar language and have concluded that negligent acts, errors and omissions are covered under the policy, not intentional acts . . . . The allegations [in the] complaint do not allege any negligent act, error, or omission . . . and, therefore, do not fall within the coverage of the policy." *Id.* (internal citations and quotations omitted).

QBE also cites *Proselect Ins. Co. v. Fica*, where the court held that the phrase "negligent act, error, or omission" does not include an allegation of intentional misrepresentation. 2009 WL 5698128, at *5–6 (Conn. Super. Ct. Dec. 22, 2009).

> All of the allegations against Nakouzi in the underlying complaint allege Nakouzi's intentional conduct in holding himself out as a licensed physician when he knew that he was not. The damages allegedly incurred by Petruzzi because of Nakouzi's conduct do not stem from Nakouzi's negligent acts. They are, instead, inextricably connected to Nakouzi's intentional conduct and, therefore, the plaintiff has no duty to defend or indemnify Nakouzi.

*Id.* at *6 (internal citations and quotations omitted).

MDC responds that its conduct, as alleged in the Underlying Complaint, was a "wrongful act" as defined in the Policy. Opp. to Mot. to Dismiss (Doc. No. 19) at 16. "The MDC intentionally assessed the non-member town water customers an additional surcharge, but the MDC did *not* know it was wrongful at the time." *Id.* (emphasis added). MDC contends that unlike the *Fica* case, where the insured knew he was not a doctor when he intentionally held himself out to third parties as one, MDC did not know it was not authorized to impose a non-member surcharge. *Id.*

When viewing the facts in a light most favorable to MDC, the Underling Action alleges a negligent act. The Underlying Action does not expressly allege that MDC's actions were intentional. The complaint acknowledges that MDC mistakenly believed that it had a legal right

7

to impose the surcharges until March 2018, when the Connecticut Supreme Court declared the practice "unlawful." *See* Underlying Compl. ¶ 11. It is reasonable to infer that although MDC "exercised discretion" to impose the surcharge, MDC officials did not intend to violate the law when billing their customers.

Therefore, the imposition of the surcharge could be characterized as a "negligent act," given the absence of allegations in the Underlying Complaint that directly charge MDC with intentional wrongdoing.

B. The Prior Knowledge Condition

QBE also contends that coverage should be denied under the Policy's prior knowledge condition.

**SECTION I – COVERAGE**

**A. Insuring Agreement**

> 1. We will pay those sums that the Insured becomes legally obligated to pay as damages because of a wrongful act . . . .
>
> c. as of the inception date of this policy, no Insured had any knowledge of any circumstance likely to result in or give rise to a **claim** nor could have reasonably foreseen that a **claim** might be made.

Policy, Section I – Coverage, A. Insuring Agreement. QBE asserts that when MDC applied for coverage on December 5, 2017, the Glastonbury Action put MDC on notice that a claim would likely be made against it during the coverage period. *See* Mot. to Dismiss at 20–21.

In response, MDC argues that the prior knowledge condition does not bar coverage because the plaintiff in the Glastonbury Action never made a claim for damages. Opp. to Mot. to Dismiss at 21. MDC relies on the *Town of Glastonbury* decision where the court noted that Glastonbury "has not articulated the specific legal theory under which it would recover those damages, and it is uncertain whether [Glastonbury] will seek to recover those damages at all."

8

*Glastonbury*, 328 Conn. at 336. Based on that language, MDC contends that Glastonbury did not give any indication that it would pursue a claim for damages against MDC. Opp. to Mot. to Dismiss at 21–22.

Courts applying prior-knowledge exclusions to claims-made insurance policies use "a two-part, subjective-objective test to determine whether the exclusion bars coverage for a particular claim, asking first, whether the insured had *actual knowledge* of a suit, act, error or omission, a subjective inquiry; and second, whether a reasonable professional in the insured's position might expect a claim or suit to result, an objective inquiry." *HSB Grp., Inc. v. SVB Underwriting, Ltd.*, 664 F. Supp. 2d 158, 193 (D. Conn. 2009)). Therefore, for the condition to bar coverage, QBE must show that (1) MDC had actual knowledge, prior to January 1, 2018, that the surcharges had been held to be illegal, and (2) a reasonable person in MDC's position would understand that those circumstances might form the basis of a future claim.

QBE argues that the subjective prong is satisfied because MDC knew of the result in the Glastonbury Action prior to the Policy's January 1, 2018 inception date. *See* Mot. to Dismiss at 22. Notably, in its supplemental opposition (doc. no. 31) MDC admits that it had prior knowledge of an adverse judgment in the Glastonbury Action, making the following statement in its August 3, 2017 official disclosure:

> The Town of Glastonbury received a judgment against the District in a lawsuit challenging the imposition of a non-member town surcharge . . . . The District believes it possessed the authority to collect the surcharge . . . . The District has appealed the decision and expects to prevail on appeal. The Town of Glastonbury did not ask for money damages in its suit. The suit is for the surcharge assessed to the Town of Glastonbury for its own municipal use of water.

Supp. Opp. to Mot. to Dismiss at 2.[3]

---

[3] MDC relies on that statement to show that it did not make any material misrepresentations to QBE in its 2017 application for the Policy. *See id.* at 1. QBE, however, does not argue that coverage is barred because of any material misrepresentation. Instead, QBE argues that MDC's truthful representation regarding its general

9

QBE argues that the objective prong is met because a reasonable person with knowledge of the lawsuit and adverse judgment in the Glastonbury Action would have known that the lawsuit and adverse judgment might give rise to a claim. "[A] subsequent action for damages by non-member customers was not only possible, but likely." Mot. to Dismiss at 23.

In this case, the prior knowledge condition bars coverage. The subjective prong is met because MDC knew of the lawsuit and adverse judgment in the Glastonbury Action when applying for the Policy. MDC admits in its supplemental response that it was aware of the result in the Glastonbury Action in August 2017, four months before the Policy became effective. The fact that the plaintiff in the Glastonbury Action did not seek money damages and was subject to appeal does not bring the Underlying Action within the scope of coverage. Once liability was established by the Glastonbury Action, it was only a matter of time before the affected customers sought restitution from MDC.

The objective prong is also satisfied. A reasonable person with knowledge of the Glastonbury Action would expect the adverse judgment to form the basis of a later claim for money damages against MDC. For instance, in *Eisenhandler v. Twin City Fire Ins. Co.*, the court rejected the insured's argument that he could not have "reasonably foreseen" the risk of a legal malpractice claim, despite his client's express representation that she would not sue him for malpractice. 2011 WL 5458180, at *2 (Conn. Super. Ct. Oct. 21, 2011).

> For the exclusion to take effect, "all that is required is that, based on the subjective knowledge of the actual attorney at issue, a reasonable attorney would understand that his actions '*might*' be the basis of a claim . . . . [T]he lack of any "threat of claim" from [the client] also does not create an issue of fact. Like her verbal assurance, [the client's] subsequent silence certainly does not, from the perspective of a reasonable attorney, eliminate the possibility that a claim might be forthcoming. Moreover, "whether the [attorney] believed, on the basis of his relationship with his client or his impression of

---

knowledge of the Glastonbury Action proves that MDC knew of circumstances that a reasonable person would expect to give rise to a claim. *See* Reply (doc. no. 10) at 8–10.

that client's reaction to the situation, that the client would make a claim is *not relevant* to [the] analysis."

*Id*. at *5 (internal citations omitted).

In the Glastonbury Action, the Connecticut Supreme Court noted in its ruling that "[t]here is no question that if the surcharges are unlawful, then [Glastonbury] *can demonstrate damages* for those years the surcharges were imposed. "*Town of Glastonbury v. Metro. Dist. Comm'n*, 328 Conn. 326, 344 (2018). Although the Supreme Court decision was issued after MDC applied for the Policy, the reasoning of the decision was equally applicable following the trial court judgment. Accordingly, a reasonable person with knowledge of the Glastonbury Action would understand that the case would literally be the basis of a future claim.

Therefore, coverage is barred under the prior knowledge condition.

C. The Self-Dealing or Illegal Profit Exclusion

Assuming the Underlying Action constitutes a "wrongful act," QBE asserts that coverage is barred under the Self-Dealing or Illegal profit exclusion set forth in the Policy.

**SECTION II – EXCLUSIONS**

**This policy does not apply to** . . . .

5. **Self-Dealing or Illegal Profit**

Any **damages** arising out of self-dealing or gaining profit or advantage to which an Insured is not legally entitled.

Policy, Section II – Exclusions, 5, Self-Dealing or Illegal Profit.

Relying on the court's holding in the Glastonbury Action, QBE contends that there is no dispute that MDC was "not legally entitled" to the proceeds received from the Non-Member Surcharge. Mot. to Dismiss at 25. QBE notes that the entire purpose of the Underlying Action is to recover damages arising out of MDC's surcharge.

11

> [MDC] wrongfully charged water customers in East Granby, Farmington, Glastonbury, [and] South Windsor an unlawful surcharge that it labeled a "Water NMT Surcharge" . . . . The Connecticut Supreme Court announced its decision [in the Glastonbury Action] affirming a Superior Court decision that held that the Surcharge was illegal from its inception up until October 1, 2014 . . . . *This is a class action to recover* those many millions of dollars of damages *that the MDC unlawfully billed customers* before October 1, 2014 . . . .

Underlying Compl., Introduction (emphasis added).

QBE cites *Westport Ins. Corp. v. Gionfriddo*, 2008 WL 11377677, at *2 (D. Conn. Apr. 28, 2008), for the proposition that courts enforce illegal profit or personal profit exclusions where the underlying claim arises out of the insured receiving profit or advantage to which it was not legally entitled. In *Gionfriddo*, the court denied a motion to join parties because there was no evidence that the parties sought to be joined were covered under the relevant policy.[4] *See id*. "The policy excludes from coverage any claim resulting from 'any criminal, dishonest, malicious or fraudulent act, error, omission or PERSONAL INJURY committed by an INSURED' and any claim resulting from 'any INSURED having gained in fact any personal profit or advantage to which he or she was not legally entitled.'" *Id.*

In opposition, MDC notes that as a non-profit entity, MDC is unable to retain any profit from the surcharge. Opp. to Mot. to Dismiss at 24. "The MDC itself is a non-profit municipal corporation and not a profit making agency. Any surpluses are returned to its customers in the form of lower rates." *Id.* Additionally, MDC argues that to the extent that it imposed surcharges on customers from non-member towns, "MDC [was] carrying out its public purpose [as a non-profit municipal corporation] in providing water and sewer services," and thus

---

[4] In the *Gionfriddo* case, the plaintiff sought a declaratory judgment stating that the liability insurance policy it issued to the defendant was void after the defendant pled guilty to wire fraud charges. *See Westport Ins. Corp. v. Gionfriddo*, 524 F. Supp. 2d 167, 172–73 (D. Conn. 2007).

12

was not acting in a way to derive corporate profit. *Id.* (citing *Considine v. City of Waterbury*, 279 Conn. 830, 845-46 (2006)).

Here, there is a clear lack of coverage under the plain language of the exclusion. Coverage is barred for "damages arising out of . . . gaining profit or advantage to which [MDC] is not legally entitled." Policy, Section II – Exclusions (5). Undoubtedly, the plaintiffs in the Underlying Action seek to recover "damages that the MDC unlawfully billed customers" through the non-member surcharges. Underlying Compl., Introduction. Although MDC argues that as a municipal corporation it is unable to obtain *profits*, MDC does not dispute that it received a financial *advantage* through the non-member surcharges.[5] The plaintiff in the Glastonbury Action specifically alleged that MDC used the funds obtained from the surcharge to "recover decreased revenues resulting from lower water consumptions resulting from a greater emphasis on water conservation" and to "provide for a more stable source of income to pay back construction and infrastructure bonds, particularly bonds related to the Clean Water Project." Glastonbury Compl. ¶¶ 44–45. Moreover, MDC provides no authority to demonstrate that a municipal corporation is exempt from an illegal profit policy exclusion.

Therefore, coverage is barred by the self-dealing or illegal profit exclusion.[6]

## IV. Conclusion

For the foregoing reasons, I **grant** QBE's motion to dismiss (doc. no. 13). The Clerk shall enter judgment in favor of the defendant and close the case.

---

[5] The term "advantage" is broader than the term "profit." *See, e.g.*, *Jarvis Christian Coll. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 197 F.3d 742, 748 (5th Cir. 1999) ("Jarvis would have this Court believe that in order to gain an advantage in fact, one necessarily has to make some sort of tangible profit. Such a construction is unreasonable, for it would render the advantage prong of 'personal profit or advantage' meaningless and superfluous. As National Union suggests, the term 'advantage' is broader than the term 'profit.'").

[6] Because coverage is barred under the prior knowledge condition and the self-dealing or illegal profit exclusion, I do not reach the question whether coverage is barred under the (1) claims-made-and-reported requirement, (2) improper collection of taxes exclusion, or (3) criminal act exclusion.

So ordered.

Dated at Bridgeport, Connecticut, this 6th day of September 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge